UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONAL OSORTO-COELLO, A-099-483-377<br><br>                Petitioner,<br><br>        v.<br><br>WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, et al.,<br><br>                Respondents. | No.  1:26-cv-3231 DC AC<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, an immigration detainee proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

I.        Factual and Procedural Background

Petitioner is a native and citizen of Honduras. ECF No. 1 at 8.  In December 2005, petitioner first arrived in the United States. Id. at 8-9.  On December 21, 2005, he was issued a Notice and Order of Expedited Removal on the ground that he was inadmissible under 8 U.S.C. § 1182(7)(A)(i)(I) and he was removed to Honduras on January 19, 2006. Id. at 9; ECF No. 8-1; ECF No. 8-2.  On December 10, 2021, petitioner arrived in the United States with his wife and four children[1] seeking asylum. ECF No. 1 at 10.  The following day, petitioner's order of

---

[1]  Petitioner and his wife were not married at the time they arrived in the United States but have since married, and they had a fifth child while living in the United States. ECF No. 1 at 1, 10.

1

removal was reinstated and he was released on his own recognizance with an ankle monitor. Id.; ECF No. 8-1 at 2; ECF No. 8-4 at 8. Petitioner and family settled in San Francisco and on February 1, 2023, petitioner's wife and children were granted asylum, at which point petitioner's ankle monitor was removed and he was instructed that he would have annual check-ins. ECF No. 1 at 10. Petitioner was ineligible to apply for asylum because he was in reinstated removal proceedings. Id. February 4, 2025, during a routine check-in, petitioner was arrested and detained and issued a notice of revocation of release. ECF No. 1 at 10; ECF No. 8 at 1; ECF No. 8-1 at 2; ECF No. 8-3 at 1. Petitioner has no criminal history and prior to his re-detention he had complied with all conditions of his release. ECF No. 1 at 10, 18; ECF No. 8-1 at 2.

On February 12, 2025, petitioner had a credible fear interview with a positive determination. ECF No. 1 at 10; ECF No. 8-4 at 10-32. Petitioner submitted a timely application for withholding of removal that was denied on September 12, 2025. ECF No. 1 at 11; ECF No. 8-7. The denial of his application is presently on appeal with the Board of Immigration Appeals (BIA). ECF No. 1 at 11; ECF No. 8 at 2. On September 18, 2025, the immigration judge held a hearing on petitioner's request for a bond redetermination hearing and denied the request on the ground that petitioner was a flight risk based on the procedural posture of his removal case. ECF No. 1 at 11-12.

On April 28, 2026, petitioner filed a petition for writ of habeas corpus under § 2241. ECF No. 1. Respondents have filed an answer to the petition (ECF No. 8), to which petitioner has replied (ECF No. 9).

II.    Petition

Petitioner asserts that his re-detention did not comply with the procedures set forth in 8 C.F.R. § 241.4(l) or alternatively § 241.13(i) and therefore violated the Immigration and Nationality Act (INA), the Administrative Procedures Act (APA), and due process. ECF No. 1 at 13-15. He next argues that his bond hearing was deficient and as a result violated the INA, APA, and due process. Id. at 15-17. Finally, petitioner argues that his prolonged detention violates due process. Id. at 17-18.

////

2

Respondents argue that petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6) because his removal has only been delayed because he is pursuing withholding of removal, he was provided a notice of revocation and interviewed in August 2025, and he was given a bond redetermination hearing. ECF No. 8 at 2-4. They also argue that there is no binding precedent requiring that petitioner be provided a bond hearing, the proper way to challenge the denial of bond is to appeal the decision to the BIA, this court does not have jurisdiction to review the bond determination, and petitioner's bond hearing was sufficient. Id. at 4-6.

III.    Discussion

A. Post-Removal Order Detention

When a non-citizen re-enters the United States illegally after previously being removed under a removal order, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). Although § 1231(a)(5) prevents an order of removal from being reopened or reviewed, "[i]t does not . . . preclude an alien from pursuing withholding-only relief to prevent DHS from executing his removal to the particular country designated in his reinstated removal order." Johnson v. Guzman Chavez, 594 U.S. 523, 530 (2021) (citing Fernandez-Vargas v. Gonzales, 548 U.S. 30, 35 n.4 (2006); 8 U.S.C. § 1231(b)(3)(A)).

Detention of non-citizens subject to a reinstated order of removal, including when that individual seeks withholding of removal, is governed by 8 U.S.C. § 1231. Id. at 526. The statute provides that when a non-citizen is ordered removed, they shall be removed within ninety days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A).

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6); Johnson v. Arteaga-Martinez, 596 U.S. 573, 578-79 (2022) (after removal period expires, "the Government 'may' detain only four categories of people" as set forth in § 1231(a)(6)).

The release of noncitizens subject to terms of supervision and the revocation of such release is governed by 8 C.F.R. §§ 241.4 (governing release and re-detention where there has not been a determination regarding likelihood of removal), 241.13 (governing release and re-detention where there is a determination of no significant likelihood of removal in the reasonably foreseeable future).  Under § 241.4(l), release may be revoked when

> (i) The purposes of release have been served;

> (ii) The alien violates any condition of release;

> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2).  Under § 241.13, release can be revoked only when the noncitizen violates a condition of release or when "on account of changed circumstances" it is determined "that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(1)-(2).  Both provisions require that the noncitizen "will be notified of the reasons for revocation of his or her release" and have "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3); see also Diaz v. Wofford, No. 1:25-cv-1079 JLT EPG, 2025 WL 2581575, at *5 (E.D. Cal. Sept. 5, 2025) (notice and interview requirements of § 243.4(l)(1) apply to revocation of release under § 241.4(l)(2) (citations omitted)).

In arguing that respondents failed to comply with the regulations, petitioner applies both 8 C.F.R. § 241.4(l) and 8 C.F.R. § 241.13(i)(3), presumably because he was unaware of which provision respondents were claiming applied.  In his reply, petitioner addresses only § 241.4 based on the Notice of Revocation attached to respondents' answer, which cited that provision.  Because the Notice of revocation cites 8 C.F.R. § 241.4, that is the provision that will be applied to this analysis.  However, the undersigned notes that the analysis under either provision would be the same because, as set forth above, both provisions contain identical language regarding the notice and interview requirements for revocation of release.

Respondents attempt to contest petitioner's assertion that they failed to adhere to the revocation procedures set forth in the regulations.  That attempt falls flat.  Although petitioner was issued a Notice of Revocation of Release at the time his release was revoked, the notice states, in relevant part:

> This letter is to inform you that your case has been reviewed and it has been determined that you will be kept in the custody of the U.S. Immigration and Customs Enforcement (ICE) at this time.  This decision has been made based on a review of your file.
>
> Based on the above, and pursuant to 8 C.F.R. 241.4, you are to remain in ICE custody.

ECF No. 8-3 at 1.  This notice completely fails to identify the reasons for the revocation of petitioner's release, much less to identify any of the authorized grounds for release under § 241.4(l).[2]  Such deficient notice fails to comply with the regulations.

Respondents also appear to argue that they complied with § 241(l)(1)'s interview requirement because petitioner was interviewed in August 2025.  ECF No. 8 at 2.  But as petitioner points out, the interview was not conducted "promptly," as it was conducted over six months after petitioner was detained and does not appear to have offered any opportunity to contest the reasons for the revocation of release.  ECF No. 9 at 4 & n.2 (citing ECF No. 8-5 (record of personal interview conducted on August 11, 2025)).  The court further notes that the form indicates that the interview was conducted pursuant to 8 C.F.R. § 241.4(i)(3), which outlines the requirements for a person interview during the process for determining whether to release a non-citizen or retain them in custody, not for circumstances where release has been revoked.  Even if the August 2025 interview complied with the substantive requirements of § 241.4(l)(1)— which does not appear to be the case—it certainly did not comport with the requirement that the interview be provided "promptly."  The undersigned therefore finds that respondents failed to comply with the requirement that petitioner be provided "an initial informal interview promptly after his . . . return to Service custody to afford [him] an opportunity to respond to the reasons for revocation stated in the notification."

---

[2] The notice also does not identify either authorized ground for revocation set forth in 8 C.F.R. § 241.13(i).

For the reasons set forth above, the undersigned finds that respondents have failed to comply with their own regulations regarding the revocation of post-final removal order release. As such, respondents have violated both the INA's implementing regulations and due process, rendering petitioner's continued detention unlawful. See 8 C.F.R. § 241.4(l) (outlining grounds and procedures for revocation of release); United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations." (citation omitted)); Truong v. Noem, No. 25-cv-2597 JES MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." (collecting cases)); Morales Sanchez v. Bondi, 811 F. Supp. 3d 1166, 1174-76 (C.D. Cal. 2025) (ICE's failure to follow regulations demonstrated detention was likely unlawful and entitled petitioner to release); Khachikian v. Casey, No. 25-cv-3737 GPC JLB, 2026 WL 63633, at *8 (S.D. Cal. Jan. 8, 2026) (ICE's violation of 8 C.F.R. § 241.13(i)(2) and (3) entitled petitioner to habeas relief). Because relief is appropriate on Claims One and Two of the petition, the court declines to address petitioner's other claims, as they seek the same or similar relief (i.e., petitioner's immediate release).

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.  Respondent must IMMEDIATELY RELEASE petitioner Ronal Osorto-Coello, A-099-483-377, from custody under the same conditions of release to which he was subject prior to his February 4, 2025 detention. At the time of release, respondents must return all of petitioner's documents and possessions.

3.  Within three days of an order adopting these findings and recommendations, respondents be required to file a notice of compliance confirming petitioner's release and that the conditions of his supervision are the same as those to which he was subject prior to his February 4, 2025 detention.

4.  Respondents be PERMANENTLY ENJOINED AND RESTRAINED from seeking to

revoke petitioner's release unless and until they comply with all procedures set forth in 8 C.F.R. § 241.4(l), any other applicable statutes and regulations, and the requirements of due process.

5. The Clerk of the Court be directed to enter judgement in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum; see also Local Rule 304(b). Within **seven** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 26, 2026

_____

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

7